1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JODY COLT on behalf of          )
KIM CASEY COLT (deceased),      )
                                )     Case No. C10-1292-MJP-BAT
             Plaintiff,          )
                                )     **REPORT AND**
        v.                      )     **RECOMMENDATION**
                                )
MICHAEL J. ASTRUE, Commissioner of the  )
Social Security Administration,  )
                                )
             Defendant.          )

        Jody Colt, on behalf of Kim Casey Colt (deceased),[1] seeks review of the denial of his

Disability Insurance Benefits applications.  Ms. Colt contends the ALJ erred by: (1) failing to

find Mr. Colt has a mental impairment at step-two;  (2) improperly discounting Dr. Fukuda's

opinions; (3) improperly discounting Dr. Fouch's opinions; and (4) improperly discounting Mr.

Colt's  testimony.  Ms. Colt also argues the ALJ, de facto, reopened the initial denial of Colt's

prior application.  Dkt. 15.  As discussed below, the Court recommends the case be **REVERSED**

and **REMANDED** for further administrative proceedings.

## I.      FACTUAL AND PROCEDURAL HISTORY

        Mr. Colt was 47 years old on his alleged disability onset date, has a high school

---

[1]  Mr. Colt died on February 2, 2010.  Tr. 5.

REPORT AND RECOMMENDATION- 1

education, completed welding trade school, and worked as an aerospace welder.[2]  He filed a

claim for benefits in December 2003.  The claim was denied and no further review of that claim

was sought.  Tr. 49.  In May, 2006, he filed another claim for benefits.  Tr. 97.  The claim was

denied initially and on reconsideration.[3]  After the ALJ conducted a hearing on April 22, 2009,

he issued a decision on May 28, 2009 finding Mr. Colt not disabled.  Tr. 19-28.  As the Appeals

Council denied Mr. Colt's request for review, the ALJ's decision is the commissioner's final

decision.  Tr. 1.

## II.      THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[4] the ALJ made the following

findings:

**Step one:**  Mr. Colt has not worked since August 15, 2001.  Tr. 24.

**Step two:**  Mr. Colt has the following severe impairments: diabetes mellitus and degenerative joint disease.  *Id.*

**Step three:**  These impairments do not meet or equal the requirements of a listed impairment.[5]

**Residual Functional Capacity:**  Mr. Colt can perform the full range of light work.  Tr. 25.

**Step four:**  Mr. Colt can perform his past work.  Tr. 27.

**Step five:**  Assuming Mr. Colt cannot perform his past work, there are jobs Mr. Colt can perform; he is therefore not disabled.  *Id.*

## III.      DISCUSSION

**A.  The ALJ's Step-Two Assessment**

Dr. Yuko Fukuda, M.D. diagnosed Mr. Colt with bipolar type II disorder.  Tr. 280.  Ms.

---

[2] Tr. 130.  131, 137-38.
[3] Tr. 50, 57.
[4] 20 C.F.R. §§.1520, 416.920.
[5] 20 C.F.R. Part 404, Subpart P. Appendix 1.

1   Colt contends the ALJ erred at step-two by failing to applying the "special technique" described

2   in 20 C.F.R. § 416.920a in assessing this mental impairment.  Dkt. 15 at 11.  The commissioner

3   concedes the ALJ did not apply the special technique but argues the failure to do so is harmless.

4   Dkt. 16 at 7-8.

5        When a claimant raises a colorable claim of mental impairment, the ALJ must follow a

6   "special technique" to evaluate the plaintiff's limitations.  20 C.F.R. § 416.920a (2006).  If the

7   claimant has a medically determinable impairment, the ALJ must "rate the degree of functional

8   limitation resulting from the impairment(s)" for the four broad functional areas: activities of

9   daily living; social functioning; concentration, persistence and pace; and episodes of

10   decompensation.  20 C.F.R. § 404.920a(b)(2), (c)(3).

11        An ALJ's failure to apply the "special technique" generally mandates remand if the

12   claimant has a "colorable claim of a mental impairment."  *Gutierrez v. Apfel*, 199 F.3d 1048,

13   1051 (9th Cir. 2002); see also *Selassie v. Barnhart*, 203 Fed. App'x 174, 176 (9th Cir. 2006)

14   ("The specific documentation requirements, therefore, are not mere technicalities that can be

15   ignored as long as the ALJ reaches the same result."); *Behn v. Barnhart*, 463 F. Supp.2d 1043,

16   1047 (C.D. Cal. 2006) (ALJ's failure to analyze the plaintiff's functional limitations calls for

17   remand).

18        A claim is colorable if it is not "wholly insubstantial, immaterial, or frivolous."  *Cassim*

19   *v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987).   Since *Guitierrez* was decided, the Social Security

20   regulations have been amended to allow the ALJ greater discretion over how to publish the

21   mandated findings.  However, even under the amended regulations, the ALJ's decision must still

22   incorporate the pertinent findings and conclusions based on the special technique.  20 C.F.R. §

23   404.1520a(e).  The decision must include a specific finding as to the degree of limitation in each

REPORT AND RECOMMENDATION- 3

1    of the functional areas.  *Id.*

2           Dr. Fukuda, M.D. diagnosed Mr. Colt with bipolar disorder and opined Mr. Colt "may

3    have trouble with detailed and complex tasks that take more than 30-40 minutes to perform" and

4    "likely would have difficulty performing work activities on a consistent basis, given his medical

5    problems."  Tr. 280.  The Court concludes Mr. Colt raised a colorable claim of mental

6    impairment, and the ALJ was thus required to follow the special technique to evaluate the degree

7    of Mr. Colt's limitation in each of the functional areas. *Gutierrez*, 199 F.3d at 1051.

8           The commissioner contends the ALJ's failure to apply the special technique is harmless.

9    Specifically, the commissioner argues "as a practical matter, the ALJ sufficiently addressed the

10   required functional finding by giving significant weight to Dr. Fukuda's opinion."  Dkt. 16 at 8.

11   The ALJ found the doctor opined Mr. Colt's "psychiatric symptoms would not prevent him from

12   working," that Mr. Colt "could do simple repetitive tasks . . . that he cooked meals and did

13   household chores," and that Mr. Colt "would have no difficulties in interacting with co-workers

14   or accepting instructions from supervisor."  Tr. 25.  The commissioner argues these findings

15   essentially address the requirements of the special technique, and support the ALJ's step-two

16   finding that Mr. Colt's mental impairments are non-severe.  Dkt. 16 at 9.

17          Essentially, the commissioner is arguing that even if the ALJ had applied the special

18   technique, he would have reached the same conclusion and found Mr. Colt's mental impairments

19   non-severe.  The Court measures this argument against the four broad functional areas the

20   special technique requires: activities of daily living; social functioning; concentration,

21   persistence and pace; and episodes of decompensation.  20 C.F.R. § 404.1520a(b)(2), (c)(3).

22          Based on the record in this case, the Court cannot join the commissioner in saying the

23   ALJ addressed all of the requirements of the special technique, and would have reached the same

conclusion had he applied the special technique.  The Court's ability to effectively review the

ALJ's decision is frustrated by the ALJ's failure to adhere to the regulations.  The decision

indicates Dr. Fukuda believes Mr. Colt can work and touches on a few activities of daily living

and the ability to interact with co-workers.  But the decision fails to address the functional areas

of persistence and pace, or episodes of decompensation.  As to these two areas,  Dr. Fukuda

opined Mr. Colt "may have trouble with detailed and complex tasks that take more than 30-40

minutes to perform" and "likely would have difficulty performing work activities on a consistent

basis, given his medical problems."  Tr. 280.  Furthermore, the doctor opined Mr. Colt "likely

would not be able to work a full day or workweek based upon his medical symptoms."  *Id.*

The Court therefore cannot conclude the ALJ addressed all of the areas of the special

technique, or that the ALJ would have reached the same conclusion had he utilized the special

technique.  Accordingly, the Court finds the ALJ's failure to use the special technique is not

harmless.

**B.      Assessment of Dr. Fukuda's Opinion**

Although the ALJ did not find Mr. Colt's mental condition is a severe impairment, he

nonetheless stated he was giving "significant weight" to Dr. Fukuda's opinion.  Tr. 25.  Ms. Colt

argues the ALJ erred by ignoring, without giving any reasons, the doctor's opinions about Mr.

Colt's problems with detailed and complex tasks, working on a consistent basis, and likely

inability to work a full day or workweek.  Dkt. 15 at 12.  The Commissioner contends the ALJ's

residual functional assessment took into account all of these limitations, and thus any alleged

errors committed by the ALJ are harmless.  Dkt. 16 at 9-10.

The ALJ's decision mentions three medical opinions—those of Dr. Fukuda, Dr. Erin

Fouch, M.D. and Dr. Howard Quint, M.D.  Drs. Fouch and Quint did not render opinions about

1    Mr. Colt's mental impairments.  Dr. Fukuda's opinions about Mr. Colt's mental impairments are

2    not contradicted by another physician; thus the ALJ may reject Dr. Fukuda's opinions only for

3    "clear and convincing reasons." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).  An ALJ

4    does this by setting out a detailed and thorough summary of the facts and conflicting evidence,

5    stating his interpretation of the facts and evidence, and making findings.  *Magallanes v. Bowen*,

6    881 F.2d 747, 751 (9th Cir. 1989).

7          Here the ALJ failed to address Dr. Fukuda's opinions about Mr. Colt's problems with

8    detailed and complex tasks, working on a consistent basis, and likely inability to work a full day

9    or work week.  Hence, the commissioner's argument that the ALJ's residual functional

10   assessment took these limitations into account, is not supported.  The ALJ simply stated "Dr.

11   Fukuda's opinion is consistent with the record as a whole."  Tr. 25.  However, aside from this

12   conclusory statement, there is nothing in the ALJ's decision indicating why the findings above

13   were not discussed, and whether they were disregarded, and if so for what reason.  An ALJ must

14   do more than offer his conclusions; he must also explain why his interpretation, rather than the

15   treating doctor's interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)

16   (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

17         Hence the Court concludes the ALJ's assessment that Dr. Fukuda's opinion is "consistent

18   with the record as a whole" is not supported by substantial evidence because the ALJ failed to

19   give any reason to disregard the doctor's opinions about all of the effects the impact bipolar

20   disorder had on Mr. Colt's ability to work.  The Court also concludes this error is not harmless.

21   An error is harmless if it is "inconsequential" to the ALJ's ultimate decision.  *Stout v. Comm'r,*

22   *Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).  Dr. Fukuda's opinions about Mr. Colt's

23   problems with detailed and skilled work, and working on a consistent basis, clearly undermine

REPORT AND RECOMMENDATION- 6

1  the ALJ's step-four finding that Mr. Colt can do his past skilled work as an experimental welder.

2  Dr. Fukuda's opinions about problems working a full work day or work week undermine the

3  ALJ's step-five determination that Mr. Colt can perform the full range of light work.

4  Additionally, Dr. Fukuda's opinion about Mr. Colt's mental problems pertain only to non-

5  exertional impairments.  As such, based on the present record, the ALJ, at step-five, should have

6  taken testimony from a vocational expert to determine whether Mr. Colt could work in light of

7  the non-exertional impairments described by Dr. Fukuda.  The ALJ did not do so[6] and instead

8  erred by relying solely on the Medical-Vocational Rules in a finding Mr. Colt can work at step-

9  five.  Accordingly, the Court concludes the ALJ erred in assessing Dr. Fukuda's opinions.

10 **C.     Assessment of Dr. Fouch's Opinions**

11         As noted above, the ALJ's decision mentions the medical opinions of three doctors.  The

12 ALJ placed "significant weight" on the opinions of Dr. Quint, an examining doctor who

13 indicated that Mr. Colt could lift and carry 20 pounds occasionally and 10 pound frequently,

14 could sit and stand 6 hours in an 8 hour day, and had normal grip strength.  Tr. 26.  Dr. Quint's

15 opinions indicate Mr. Colt can perform light work.

16         Dr. Fouch, another examining doctor, opined Mr. Colt could sit 3-4 hours in an 8 hour

17 day but would need to take frequent breaks, approximately every 10 minutes.  The doctor opined

18 Mr. Colt could stand 1-2 hours in an 8 hour day, needed a cane to walk and could lift no more

19 than 10 pounds.  And finally, the doctor opined Mr. Colt is unable to bend, stoop or crouch at all.

20 Tr. 312.

21         Ms. Colt argues, and the Court agrees, the ALJ erred in discounting Dr. Fouch's

22 opinions.  As noted above, where contradicted, an ALJ may not reject an examining physician's

23 ────────────────

[6] The ALJ called a vocational expert but only to testify about the exertional and skill levels of Mr. Colt's past work as a welder.  Tr. 33-34.

opinion without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Lester v. Chater*, at 830-31. Here, although the opinions of Dr. Fouch and Dr. Quint are inconsistent, the ALJ gave no reasons to reject or discount Dr. Fouch's opinions. The ALJ's failure to do so is particularly problematic in this case. Both physicians are examining medical doctors. The record reveals no differences in their qualifications or expertise. Both doctors performed evaluations for MDSI Physician's Group using the same format and evaluative techniques. Under these circumstances, the ALJ had a clear duty to provide legitimate reason for why he favored Dr. Quint's opinions over Dr. Fouch's opinions.

Although the ALJ utterly failed to provide specific and legitimate reasons to discount Dr. Fouch's opinions, the commissioner argues the ALJ did not err. The commissioner first argues the ALJ does not have to discuss insignificant or non-probative evidence. Dkt. 16 at 7. This might be true in the abstract. But as applied here, the argument makes little sense. The ALJ discussed some of Dr. Fouch's opinions and thus obviously recognized they had some significance. Moreover, in Dr. Fouch's opinion, Mr. Colt is more impaired than Dr. Quint found. Given this difference, Dr. Fouch's opinions were significant and probative evidence.

Second, the commissioner argues Dr. Fouch's opinions were rendered after the date last insured and thus are not probative of Mr. Colt's condition during the earlier insured period. Dkt. 16 at 6. This was not a reason the ALJ gave to reject Dr. Fouch's opinion. Thus the commissioner's argument is a post-hoc rationalization this Court cannot rely on to affirm the ALJ. *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). Moreover, an ALJ may not reject a medical opinion solely because it was rendered retrospectively. *See, e.g., Morgan v. Comm'r*, 169 F.3d 595, 601 (9th Cir. 1999). Accordingly, the Court cannot rely on the "retrospective" nature of Dr. Fouch's opinion to affirm the ALJ.

REPORT AND RECOMMENDATION- 8

1    And third, the commissioner argues the ALJ "implicitly rejected [Dr. Fouch's] opinion by

2    giving significant weight to Dr. Quint's opinions." Dkt. 16 at 7. This argument has no merit.

3    The ALJ is entitled to favor one doctor's opinion over another doctor's opinion, but only if the

4    ALJ gives specific and legitimate reasons to do so. The commissioner's argument merely states

5    what is obvious in the ALJ's decision—that the ALJ favored Dr. Quint's opinion over Dr.

6    Foucher's opinion. This tells the Court nothing about whether there are any specific and

7    legitimate reasons the ALJ relied upon in favoring Dr. Quint's opinion. Accordingly, it is not a

8    basis to uphold the ALJ's assessment of Dr. Foucher's opinions.

9    **D.    The ALJ's Assessment of Mr. Colt's Testimony**

10   There is no evidence of malingering. The ALJ may thus reject Mr. Colt's testimony

11   regarding his symptoms only by making specific findings stating clear and convincing reasons

12   for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). "The ALJ must state

13   specifically which symptom testimony is not credible and what facts in the record lead to that

14   conclusion." *Id.* at 1284 (citation omitted).

15   The ALJ's discussion about Mr. Colt's credibility is sparse. The ALJ stated:

16          Considering the claimant's daily living activities, ***his lack of***
            ***credibility as to his functioning to the point of adopting a cane***
17          ***without a medical prescription***, and use of motorcart, and the
            reports and opinions of the consultative examiners, the claimant is
18          found to able to do light work.

19   Tr. 27 (emphasis added). The commissioner argues Mr. Colt's use of a cane without a

20   prescription is a clear and convincing reason[7] to discredit Mr. Colt's credibility. Dkt. 16 at 12.

21   ───────────────────

22   [7] The Commissioner argues the ALJ gave several clear and convincing reasons to discount Mr.
     Colt's testimony. The ALJ gave several reasons to support his conclusion that Mr. Colt can
     perform light work such as "the claimant's daily living activities," use of motorcart, and the
23   reports and opinions of the consultative examiners. Tr. 26. However, the ALJ did not state that
     these reasons supported a finding that Mr. Colt is not credible. Hence, the Court concludes the

REPORT AND RECOMMENDATION- 9

1    The Court is not persuaded by this argument.

2        The fact Mr. Colt uses a cane without a prescription is not dispositive evidence that he

3    lacks credibility.  The Social Security Rulings direct the ALJ to consider the facts of each case,

4    not whether there is a prescription for a cane.  The Rulings direct that, "to find that a hand-held

5    assistive device is medically required, there must be medical documentation establishing the

6    need for the device to aid in walking or standing, and describing the circumstances for which it is

7    needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain;

8    and any other relevant information).  The adjudicator must always consider the particular facts of

9    a case."  SSR 96-9p.  In this case, Dr. Foucher opined:

10                 The claimant uses a cane to walk, and per his report, this helps
                 with his back pain.  I would recommend evaluation by a physical
11                 therapy [sic] to see if there is any other assistive device that might
                 be more beneficial for him, such as a walker, but for now I do
12                 think that he needs the cane in order to walk.

13    Tr. 312.  Dr. Foucher's opinion that Mr. Colt "needs a cane in order to walk" is medical

14    documentation establishing the need for an assistive device.  The ALJ, however, discounted Mr.

15    Colt's testimony by completely misstating Dr. Foucher's opinion.  The ALJ found  "Dr. Foucher

16    stated the claimant did not need the cane in order to walk."  Tr. 26.  This is a finding that is

17    obviously at odds with Dr. Foucher's actual opinion.  There are cases where the ALJ

18    appropriately discounted a claimant's credibility because there was no medical evidence

19    indicating the claimant needed to use of a cane.  *See e.g. Verduzco v. Apfel*, 188 F.3d 1087, 1088

20    (9th Cir. 1999) (ALJ properly rejected allegation claimant needed a cane where there was no

21    medical evidence he needed a cane and 2 doctors found claimant did not need a cane).  This

22    however, is not such a case.  Dr. Foucher opined Mr. Colt needed a cane to walk; thus Mr. Colt's

23    only reason the ALJ clearly articulated to discount Mr. Colt's testimony was the use of a cane
     without a prescription.

REPORT AND RECOMMENDATION- 10

use of a cane without a prescription is not a reason to discount his credibility.  Accordingly, the Court concludes the ALJ erred in discounting Mr. Colt's credibility.

**E.     Whether the ALJ, De Facto, Reopened the Prior Application**

The parties argue over whether the ALJ reopened the first application for benefits Mr. Colt made in 2003.  The commissioner acknowledges "by alleging an onset for a previously adjudicated period, Plaintiff arguably made an implied motion to request to reopen" but argues Mr. Croft has not shown "good cause" to do so.  Dkt. 16 at 13.  The Court, however, agrees with Mr. Colt's contention that this argument misses the mark.  "[W]here the Commissioner considers 'on the merits' the issue of the claimant's disability during the already adjudicated period," then 'a de facto reopening' will be deemed to have occurred, and "the Commissioner's decision as to the prior period [will be] subject to judicial review."  *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1996).

Here, the ALJ considered on the merits the issue of Mr. Colt's disability, with an onset date of August 15, 2001.  The record is not clear whether Mr. Colt alleged the same onset date in his first application.  To the extent the two applications have the same onset dates, and thus involve assessments of disability over the same periods, the Court concludes the ALJ de facto reopened the issue of Mr. Colt's disability over the already adjudicated period.

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends the Commissioner's decision be **REVERSED** and **REMANDED** for further administrative proceedings.  On remand, the ALJ should:  (1) further develop the medical evidence, as necessary; (2) reevaluate the medical opinions in the record, (3) reassess step two of the evaluation process; (4) reevaluate Mr. Colt's residual functional capacity; (5) reassess the testimony Mr. Colt has given and (6) reassess steps

four and five of the sequential evaluation process with the assistance of a vocational expert if
deemed appropriate.  A proposed order accompanies this Report and Recommendation.

DATED this 1st day of March, 2011.


_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION- 12